(87 South. 723)

No. 24049.

## RIGGS v. NEW ORLEANS, T. & M. RY. CO.

(Jan. 31, 1921. Rehearing Denied Feb. 28, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Carriers** &#10026;381(4)—**Evidence insufficient to show passenger was pushed from train by porter.**

In an action for injuries claimed to have been sustained by plaintiff while a passenger on defendant's train by being pushed from the train by defendant's porter, evidence *held* insufficient to show that the injury happened in the manner alleged.

2. **Evidence** &#10026;265(8)—**Admission by pleading contributory negligence held not to entitle injured party to recover.**

In an action by one claiming to have been injured while a passenger by being pushed from the train by the porter, defendant's allegation of contributory negligence in attempting to alight before the train stopped, though an admission that plaintiff was a passenger, did not entitle plaintiff to recover, where from all the facts as developed on the trial he failed to make out a case; the evidence tending to show that he was stealing a ride and was injured in getting off as the train approached a station.

O'Niell, J., dissenting.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by Lawrence Riggs against the New Orleans, Texas & Mexico Railway Company. From a judgment for plaintiff, defendant appeals. Judgment set aside, and suit dismissed.

Dudley L. Guilbeau, of Opelousas, and Dufour & Janvier, of New Orleans, for appellant.

E. T. Lewis, and E. V. Boagni, both of Opelousas, for appellee.

PROVOSTY, J. Plaintiff, a colored boy 18 years old, claims that as the train of the defendant company on which he was a passenger was crossing Court street in the town of Opelousas he was pushed off by the colored porter, and that in some way his leg got upon the rail and was crushed. By a verdict concurred in by 9 of the 12 jurors, he was awarded $5,000 damages, and defendant has appealed.

[1] The porter denies that he pushed plaintiff off; and, as no reason is assigned why he should have done such a thing, and the thing is in itself improbable, we should be inclined to believe him even in the absence of the other circumstances in the case which utterly discredit plaintiff's statement.

The train was going east, and as it crossed Court street was slowing up for a full stop at the passenger depot two blocks or 680 feet ahead. The depot was on the south side, that is on the right-hand side of the passengers facing in the direction in which the train was going, and that was the side on which the vestibule door had to be opened for letting the passengers in and out; and that is the side on which plaintiff claims he was pushed off. The testimony shows that the vestibule door is usually opened about half a block or a block before the train comes to a full stop; and the porter testifies that, preparatory to opening this door through which plaintiff claims to have been pushed, he was standing on the trap of it, while the conductor was standing on the same platform, on the trap of the door on the north side, when that part of the train passed Court street. The conductor gives the same testimony. The conductor explains that, as the colored coach was crowded, and some of the men were drinking, and he feared there might be a rush for getting off the train when it came to a full stop, he had taken the precaution of shutting the coach door and standing on the platform to watch this door.

As the train was passing Court street, the chief of police of the town happened to be going south on this street, and had to stop

to let the train pass. He was on horseback. From the place where his horse stopped, 50 or 60 feet from the track, he, as soon as the train had passed, saw plaintiff "between the rails trying to get up, on the north side. * * * He scrambled over on the north side of the track." The spots of blood found afterwards on the ground were all on the north side of the track; none on the south side.

The place where plaintiff claims to have been pushed off was an open street. The ground there was nearly level, and the only slope there was was away from the track. The lower step of the coach extended out 2 feet from the track. Had plaintiff been pushed off, the movement of his body would have been away from the track, and not towards it.

Entirely consistent with these facts is the theory that plaintiff was stealing a ride on the tender, and that in getting off when the train began to slow down he fell on the rail. On the back part of the tender is a place, it seems, where a venturesome person may conceal himself for traveling free. The person so riding would want to get off before the train had reached the station, and on the side on which he could not be seen from the station, and would likely attempt to do so as soon as he thought the train had slowed down sufficiently. It is a dangerous proceeding. This would explain plaintiff's having been on the north side and his leg on the rail.

Six acquaintances of plaintiff, colored men, who traveled on the same train with him from Beaumont, Tex. to Opelousas, saw him at the station in Beaumont, and one of them saw him on the train before it started, but none of them saw him on the train after it had started. This would not prove that he was not inside of the coach, for every seat was occupied, and his presence might well have escaped the attention of these men, yet this testimony would go towards increasing the probability of the plaintiff's having ridden on the tender and received his injury in getting off on the north side of the train before it had reached the station.

Plaintiff testifies that the lights in the vestibule from which he was pushed off were not burning. In this he is overwhelmingly contradicted.

His having been on the north side of the track after the accident being entirely inconsistent with the theory of his having been pushed off on the south side, he sought to overcome the difficulty by testifying that after his fall his brother and a man named Alfred Woods had moved him to that side. Alfred Woods, produced by defendant, testified that he had not been there at all, and knew nothing of the matter. The man who came to plaintiff immediately after the accident with plaintiff's brother was Wilson Lewis. He testified that plaintiff was on the north side, and was not moved. Plaintiff sought to explain that Wilson Lewis went by the name of Alfred Woods, but Wilson Lewis positively denies this. The brother of plaintiff testified that he and Wilson Lewis moved the plaintiff to the north side of the track. But in the first place, there is no reason at all why a grievously wounded man should have been moved at all from the south side to the north side; in the second place, the testimony of the chief of police, an entirely disinterested and highly reliable witness, is to the contrary.

Plaintiff produced a colored boy who at the time of testifying was 16 years old, and who therefore at the time of the accident was 13 years old, bearing the maloderous nickname of Polecat, and who, we gather from the record, has been more or less of a shiftless character about the town, who testifies that he had sat up that night in order to carry the suit case of a man to the depot, and that just as he and this man passed by the plaintiff fell out of the train on the south

side. He also says that he was at Main street, one block beyond Court street, when the man fell, but happened to look back, and saw him fall; that he does not know the name of the man whose suit case he was carrying; that he did not stop to find out if the man had got hurt, but went on to the depot, and there went to sleep.

This train was not due at Opelousas before 3 o'clock in the morning. It is improbable that this 13 year old boy would have sat up until that hour of the night to carry a suit case to the depot; and still more improbable that, seeing a man fall off of a moving train and go under the train, he would not either have stopped, or, at any rate, have immediately returned to the spot for satisfying his curiosity as to the result of the tragedy, but would quietly have continued to the station, a block off, and there sat or lain down for a nap.

[2] In the answer it is alleged that the plaintiff was guilty of contributory negligence in attempting to alight from the train before it had come to a full stop. Plaintiff's learned counsel contend that this plea carries with it an admission that plaintiff was a passenger on the train.

That is no doubt so; but, under the circumstances, we do not think that the defendant company should be debarred relief if from all the facts of the case as developed on the trial the plaintiff fails to make out a case. When the answer was filed, the defendant company had no reason to believe that plaintiff had not been a passenger, and the probability was that his having received the injury was the result of his having alighted from the train before it had come to a full stop.

The judgment appealed from is set aside, and plaintiff's suit is dismissed at his cost in both courts.

O'NIELL, J., dissents from the conclusion on the facts.